**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Lisa Brockwell,** | ) | **CASE NO. 1: 11 CV 2726** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| v. | ) | |
| | ) | |
| **Carolyn Patrick,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

This is a removed action alleging claims under 42 U.S.C. §1983 and state law. Defendant, Carolyn Patrick, has filed a motion for summary judgment on plaintiff's complaint. (Doc. 16.) For the reasons stated below, the motion for summary judgment is granted as to plaintiff's federal claim under Section 1983. Plaintiff's remaining state law claim is remanded to state court.

**Facts**

Plaintiff, Lisa Brockwell, and Defendant, Carolyn Patrick, are residents of Woodmere Village, Ohio. Plaintiff and defendant have both been involved in local Woodmere Village politics. Plaintiff was first elected to Woodmere Village Council in January 2006. She has been Council President since January 1, 2012. When plaintiff became involved with Council,

1

defendant had already been involved with Council, serving as a member since at least as early as 2004.

Plaintiff established herself as a "dissenting voice" on Council and opposed various policies of defendant and other Woodmere Village politicians, including Woodmere's then-Mayor, Yolanda Broadie, who was a friend and political ally of defendant's.

In 2007, Woodmere and Broadie were sued for discriminatory conduct by Woodmere's Police Chief, who alleged that Broadie had engaged in a pattern of harassment against him in retaliation for his support of two Woodmere police officers who Broadie had fired.  Plaintiff recommended that Council settle the action in order to save the Village money, but Broadie was not agreeable to a settlement.  Plaintiff was called to testify in the litigation, and her testimony was damaging to Broadie.

Plaintiff alleges that in retaliation for her conduct challenging the actions of Broadie's administration and Broadie's political allies, plaintiff was subjected to a pattern of harassment and intimidation.  Plaintiff testified that Broadie directly threatened her and told her she "had people watching her."  In June 2009, after plaintiff had an argument with Broadie and other council members "about a proposal to outsource the Woodmere Fire Department," plaintiff's house was destroyed in a fire that was determined to be arson by the State Fire Inspector.  The fire was set in the middle of the night while Brockwell and her autistic daughter were sleeping.  No criminal charges for arson were ever filed due to a lack of physical evidence identifying the perpetrator, although the investigation remains open.

During the election year 2009, plaintiff was again a candidate for Council.  In November 2009, just before the election for Mayor and council positions, a flyer was

distributed in mailboxes of Woodmere Village residents.  The flyer, a copy of which is attached as Exhibit 1 to plaintiff's complaint, attacks four candidates for office.  Plaintiff is identified in the flyer as "Loaded Lisa Brockwell."  The flyer states regarding plaintiff:  "Tell it like it really happened.  School bus driver yesterday.  Arsonist today.  KKK tomorrow.  Will she target your house next?"  Pictured next to plaintiff's name on the flyer is a rope tied in a noose.

An investigation into the flyer was conducted by the Woodmere Police Department.  The Police Report regarding the incident states:

> Ptl. Wilson stated that while on stationary patrol . . ., he observed a vehicle traveling South on Roselawn with only its parking lights on stopping in front of houses for a few moments then moving on . . .  Ptl. Wilson described the vehicle as a Black GMC Envoy bearing Ohio license plate (CP923).  With a check through LEADs, the registered owner is Council President Carolyn L. Patrick . . .

(Pltf. Ex. 8.)  The Police Report further stated:

> [T]he information gather[ed] appears to show that the female driver of Mrs. Patrick's Black GMC Envoy was distributing the derogatory political literature into the mail boxes of the Village.  Multiple copies of the letter were gathered as evidence and will be processed for fingerprints.  The paper appears to be the same blue and yellow paper purchased by the Village of Woodmere for official business.

A subsequent report of the Cuyahoga County Sheriff's Department regarding the matter indicates that defendant was asked about the flyer and the fire at plaintiff's home during a subsequent interview.  The report indicates that defendant denied any involvement with producing or distributing the flyer or the arson; however, when she was asked if her fingerprint would match a fingerprint on the recovered flyer, defendant stated that her fingerprint "might be on the paper."  (Pltf. Ex. 9.)

3

Later (and in this litigation), defendant took the position that she had in fact distributed material in mailboxes on the night in question, but the material she distributed was not the derogatory flyer.  Instead, defendant asserted that she had distributed a 1992 article from the Cleveland *Plain Dealer* regarding other political issues.  (Def. Dep. 39-41.)  The 1992 *Plain Dealer* article was not mentioned in the Woodmere Police Report or the Cuyahoga County Sheriff's Department Report.

Plaintiff also submits a memorandum written by a special prosecutor, William Doyle. (Ptlf. Ex. 2.)  This memorandum indicates that a Village resident saw the driver of defendant's vehicle placing flyers into mailboxes in the Village.  The resident told the special prosecutor that there "was a level of intimidation and fear in the City that there were a lot of people who may not want to get involved in this case for fear that there may be some type of reprisal."

Plaintiff asserts that there will be testimony at trial that defendant further threatened her at a subsequent May 18, 2011 Woodmere Council meeting where plaintiff and others raised the issue of the investigation into the flyers.  Defendant refused to answer further questions about the flyer and walked out of the meeting, stating to Brockwell, "we're gonna finish this."

No criminal charges were ever brought against defendant.  Apparently, defendant and plaintiff continued to serve on Woodmere Village Council.

Plaintiff brought the present lawsuit in Ohio state court on November 2, 2011, alleging two causes of action against defendant, in both her "personal" capacity and in her "official capacity as a member of the Village of Woodmere Council."  Plaintiff's first cause of action

alleges that defendant, "has taken advantage of her position in the Woodmere government and used that position to engage in a pattern of harassment, intimidation and menacing of Ms. Brockwell as alleged herein because of her political viewpoints, and in retaliation of Ms. Brockwell's truthful testimony in the Yolanda Broadie litigation, in violation of Ms. Brockwell's right to freedom of speech and association under the First Amendment of the United States Constitution as secured to her by 42 U.S.C. § 1983."

The second cause of action is for "Civil Liability for Criminal Conduct" pursuant to Ohio Rev. Code § 2307.60(A)(1), which provides: "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." Plaintiff alleges that she has suffered damages as a result of defendant's conduct violating Ohio's "aggravated menacing" and "menacing" statutes, Ohio Rev. Code §2903.21 and §2903.22.[1]

Plaintiff subsequently voluntarily dismissed her claims against defendant in defendant's official capacity. (Doc. Nos.14, 15.)

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." The

---

[1] Ohio Rev. Code §2903.21 provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the person's immediate family. Ohio Rev. Code § 2903.22 provides: "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the person's immediate family."

procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).  In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.  *Id.* at 255.

**Discussion**

Defendant contends that plaintiff has no viable claim against her under 42 U.S.C. §1983.  Defendant asserts that plaintiff has dismissed her Section 1983 claim against her in her "official capacity"; therefore, there is no "state action" as required to assert a claim under Section 1983.  In addition, defendant contends that even if she had distributed the derogatory flyer in question, her doing so constitutes constitutionally protected First Amendment activity

and the "exercise of her [own] First Amendment rights to political speech would not violate Plaintiff's First Amendment rights." (Def. Mem. at 7.)

In her opposition brief, plaintiff does not oppose defendant's motion for summary judgment on her Section 1983 claim and agrees with defendant that "Count I should be dismissed." (Pltf. Opp. at 2.) Plaintiff asserts that when she "voluntarily dismissed her official capacity claims against Defendant, she understood that she would not be able to pursue her claim under 42 U.S.C. § 1983." (*Id*.)

Defendant's motion for summary judgment as to the first cause of action under Section 1983 is granted. In order to establish a claim under Section 1983, a plaintiff must allege that she was deprived of rights secured by the Constitution or laws of the United States by a person acting under color of state law. *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992) (granting summary judgment where plaintiff did not establish state action). Plaintiff has not come forward with evidence or argument indicating that state action exists here or that plaintiff has a viable claim against defendant under Section 1983. Rather, plaintiff acknowledges that she has dismissed her claims against defendant in defendant's official capacity and that she cannot pursue a Section 1983 claim. Accordingly, summary judgment is warranted on the Section 1983 claim.

This leaves plaintiff's state law claim for "Civil Liability for Criminal Conduct." Defendant contends this claim also fails to state a claim. Defendant argues: "Since Plaintiff has disavowed any knowledge or belief that Carolyn Patrick was involved in the alleged arson . . ., that leaves only the Flyer as the predicate basis for a crime-based cause of action." Defendant asserts that none of the statements made in the Flyer establish the elements of

menacing or aggravated menacing under Ohio law. (Def. Mem. at 15-16.) Plaintiff contends genuine issues of material fact exist as to whether defendant's distribution of the flyer and "subsequent threat at the May 18, 2011 meeting could support a finding of menacing and aggravated menacing under O.R.C. 2903.21 and 2903.22." (Pltf. Opp. at 11.)

The Court declines to exercise supplemental jurisdiction over plaintiff's state law claim alleged in count two and remands the claim to state court. A district court has broad discretion under 28 U.S.C. § 1367 in deciding whether to exercise supplemental jurisdiction over state law claims, and 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the "district court has dismissed all claims over which it has supplemental jurisdiction." As the Sixth Circuit has recognized, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010). The balance of considerations points to remand here. Remand to state court is warranted to promote the interest of preventing federal courts from needlessly deciding state law issues.

**Conclusion**

For the reasons stated above, defendant's motion for summary judgment is granted as to plaintiff's federal claim under 42 U.S.C. § 1983, and plaintiff's remaining state law claim is remanded to state court where it was initially brought.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 10/23/12    United States District Judge